IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>LEON PAUL KAVIS, JR.,<br><br>Defendant/Movant. | Cause No. CR 20-53-M-DLC<br>CV 22-63-M-DLC<br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE<br>OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Leon Paul Kavis's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Kavis is a federal prisoner proceeding with appointed counsel.

The Court held a hearing on January 30, 2024. The motion will be denied.

## I.  Background

Kavis pled guilty to Count I, conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and Count III, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). On July 20, 2021, he was sentenced to serve 180 months on Count I, followed by 60 months on Count III, terms to run consecutively, for a total custodial term of 240 months, and five years' supervised release on both counts, to run concurrently. (Doc. 52.) Kavis did not appeal.

1

On December 8, 2021, Kavis wrote a letter to the Court asking who the attorney in charge of his appeal was. (Doc. 58.) The Court construed his letter as a possible § 2255 motion and directed him to file a form motion, if that is what he intended to do. (Doc. 59.) He filed his first motion on March 21, 2022. (Doc. 62.) The Court subsequently appointed Stephen Hormel as counsel for Kavis, who filed an Amended Motion on March 30, 2023. (Doc. 79.) The United States answered the motion on July 17, 2023.  (Doc. 85.)

Kavis's amended motion proposes five grounds for relief related to ineffective assistance of his trial counsel. (Doc. 79-1.) Ground One is ineffective assistance of counsel for failing to advise Kavis of a defense to the conspiracy charge before he agreed to plead guilty. (Doc. 79-1 at 2 – 3.) Ground Two alleges ineffective assistance of counsel for failing to advise Kavis of the correct elements of Count III of the Indictment, prior to signing his plea agreement. (Doc. 79-1 at 4 – 6.) Ground Three asserts that trial counsel coerced Kavis into signing the plea agreement by providing him incorrect information regarding the consequences of his plea, or alternatively, of going to trial. (Doc. 79-1 at 7 – 9.) Ground Four alleges that trial counsel did not provide the plea agreement until the last day possible and provided misleading information to Kavis, thus causing him to accept the agreement against his interest. (Doc. 79-1 at 9 – 11.) Finally, Ground Five asserts that trial counsel was ineffective for failing to file an appeal, after having

been directed to do so by Kavis. (Doc. 79-1 at 11 – 12.) Kavis asks the Court to vacate his guilty pleas and convictions, and/or grant him an out-of-time appeal.

The Court held an evidentiary hearing on January 30, 2024. Kavis was present and testified, as did trial counsel Ryan Heuwinkel. Prior to the hearing, Kavis waived Grounds One, Three, and Four of his motion. Several exhibits were admitted, as noted below.

## II.  Findings and Conclusions

In filing this motion, Kavis claims "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," and moves "the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. The burden of proving the claim rests on Kavis. *Parke v. Raley*, 506 U.S. 20, 31 (1992).

The overarching contention of Kavis's motion is that Ryan Heuwinkel provided ineffective assistance of counsel in various ways. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Kavis must prove facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694. *See also Premo v. Moore,* 562 U.S. 115, 121 (2011). In the context of a guilty plea, "in

3

order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* at 697.

**A. Whether Heuwinkel was ineffective because he failed to advise Kavis of the proper elements of the 18 U.S.C. § 924(c) charge.**

A guilty plea "is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal citations and quotations omitted). The Court finds that Kavis's plea agreement was knowing and voluntary, despite the incorrect description of the elements. Kavis was well-informed about his charges, the penalties he faced, and the evidence stacked against him. No rational defendant in his position would have gone to trial.

Kavis asserts he could not have knowingly pled guilty to Count III of the Indictment because he was not properly informed of the elements of the crime. (Doc. 80 at 9.) The Plea Agreement and the Government's Offer of Proof both included the following incorrect recitation of the elements:

4

> First, the *defendant committed the crime of conspiracy to possess with intent to distribute methamphetamine*;
>
> Second, the defendant knowingly possessed firearms;
>
> Third, the *defendant possessed the firearm in furtherance of possession with intent to distribute*.

(Doc. 79-4 at 4); (Doc. 25 at 3) (emphasis added). (Count III was also improperly numbered as II.) These were also the elements recited at Kavis's change of plea hearing. (Doc. 79-5 at 4; Tr., Doc. 78-6 at 46 – 47.) In this recital, elements one and three assert different crimes, making it an improper statement of the law. Heuwinkel thus provided ineffective assistance, Kavis asserts, because he failed to advise Kavis that the recitation in the plea agreement was incorrect, and he agreed, at the time of the change of plea hearing, that those elements were correct. (Doc. 80 at 11; Tr., 78-6 at 47.)

At the evidentiary hearing, Heuwinkel testified that he did not recall discussing the mistaken elements with Kavis, and that he may not have noticed it. He did, however, recall that the discovery was sufficient to convict Kavis of the 924(c) charge, and thus, he had encouraged Kavis to plead guilty to it. The elements of each count were properly described in the Indictment. (Doc. 9.)

Kavis's counsel argued that Kavis could not have made a knowing, intelligent, and voluntary plea, given that he was pleading guilty to elements that were not correct for the crime, relying on *Bradshaw v. Stumpf*, at 182-183. In

5

*Bradshaw*, the U.S. Supreme Court considered whether a defendant had made a knowing plea because he was not aware of an element of the charge and may have factually disputed it. The Supreme Court concluded that the defendant's plea was, in fact, knowing and voluntary.

Kavis's counsel at hearing emphasized the possibility that one could participate in a conspiracy without participating in a substantive act in furtherance of it; therefore, in theory, Kavis could have possessed a firearm in conspiring, but not in possessing with intent. Thus, theoretically, the mistaken elements could have led him to plead guilty to a charge that he was not, in fact, guilty of. As a factual matter, however, that was not true.

Sworn statements in open court are presumed to be truthful. The Court may summarily dismiss "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." *Blackledge,* 431 U.S. at 74; *see also United States v. Ross,* 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.").

The Court concludes that Kavis was aware of the elements of the crimes he was charged with. Kavis stated under oath at his change of plea hearing that he had read and understood his Indictment and that it had been fully discussed by him with his counsel. (Doc. 71, COP Tr. 12:14-17.) He also affirmed during his change

of plea and again at the evidentiary hearing that his counsel had thoroughly explained the evidence against him. Kavis stated that he understood the maximum and minimum penalties that applied to him. (Doc. 71, COP Tr. 14:1-15:1.) The Court finds that Kavis was sufficiently aware of the elements required to convict him of Count III, such that his plea to that Count was knowing, voluntary, and intelligent.

Furthermore, the admitted facts demonstrate that he was, in fact, guilty of the correct elements of Count III. At his change of plea hearing, Kavis stated:

> I had contacted some individuals in California and purchased methamphetamine there and brought it back to Montana and distributed it to people in the Flathead Valley and Missoula area.
>
> ... And I had other people that were involved with me in the distribution of meth.

(Tr., 79-6 at 50).

Kavis admitted under oath at his change of plea that he did possess a firearm "at all times while I was distributing meth." (Doc. 71, COP Tr. 50:18-20.) He reiterated this fact at the hearing when he stated that he always had a gun with him, no matter what he was doing, whether distributing methamphetamine or conspiring to do so.

Further, viewing these facts through the lens of ineffective assistance, Kavis must establish that the mistake in elements prejudiced him, and that he would have proceeded to trial had the mistake not occurred. Kavis does not carry that burden.

7

Kavis fails to show that a rational defendant primarily concerned with reducing his penalty risk would have chosen to go to trial. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). The hearing illuminated an issue that was previously unknown to the Court: the discovery provided to Kavis during his prosecution inaccurately portrayed his criminal history. One charge was identified as simple possession of dangerous drugs, when in fact, it was possession with intent to distribute. As such, considering his accurate criminal history, Kavis likely would have been subject to the career criminal enhancement in the sentencing guidelines, and his criminal history category would have gone from IV to VI. However, Kavis's counsel successfully bargained with the U.S. to an agreement not to seek that enhancement. This bargain saved Kavis many years on his sentence, potentially a doubling of his sentence. The Court concludes that no rational defendant would forgo the advantage of that bargain, in light of his admission that he knew the Government had sufficient evidence to prove his guilt, and his knowledge of his true criminal history. Heuwinkel's failure to notify Kavis about the mistaken recitation of the elements of Count III was not constitutionally ineffective assistance of counsel.

**B.  Whether Heuwinkel was ineffective because he failed to file a notice of appeal.**

The terms of Kavis's plea agreement required him to waive his right to

8

appeal. (Doc. 25 at 7 - 8.) At his change of plea hearing, Kavis acknowledged that he was waiving his right to appeal. (Doc. 71, COP TR. 29:20-30:1.) However, Kavis asserts that he informed Heuwinkel at his sentencing hearing that he wanted to appeal after all. Relying on *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), Kavis asserts that Heuwinkel's failure to file a notice of appeal was ineffective assistance of counsel.

At the point of appeal, counsel has two constitutional duties: a conditional duty to consult with the client about appeal, and an unconditional duty to file a notice of appeal if instructed to do so, even if the defendant waived appeal, and even if counsel believes an appeal is frivolous. *See Garza v. Idaho*, 586 U.S. __, 139 S. Ct. 738, 747 (2019); *Roe v. Flores-Ortega*, 528 U.S. 470, 477–80 (2000).

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable… ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit").

*Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (internal citations omitted).

Failure to consult, however, may not be per se ineffective. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Flores-Ortega*, 528 U.S. at 479 (emphasis in original). The Supreme Court held that counsel has a constitutional duty to consult with the defendant if there is

reason to think a defendant would want to appeal, or if the defendant showed an interest in appealing. In this regard it is necessary to consider the information that counsel "knew or should have known." *Flores-Ortega*, 528 U.S. at 480.

There is no doubt that Heuwinkel and Kavis consulted about a possible appeal prior to his sentencing. They discussed his right to appeal in the context of his plea agreement, because he waived that right there. At the hearing, Heuwinkel testified that he had had many discussions with Kavis about the waiver of his appeal prior to sentencing, including while he was deciding whether to take the plea agreement. Heuwinkel did not speak with Kavis about the appeal after the sentencing because he had previously discussed it repeatedly, and Heuwinkel had had no further indication that Kavis wanted to appeal.

The question, then, is did Kavis convey to Heuwinkel that, despite these previous discussions, he wanted to appeal? Kavis has provided three versions of what he contends was his demonstration of his intent to appeal. In his first declaration in support of his motion, he stated "After the sentencing hearing, Mr. Heuwinkel and I discussed an appeal. I instructed Mr. Heuwinkel that I wanted to file an appeal. He informed me that he would not handle an appeal for me. He also stated that he was no longer taking federal criminal cases, and that he was leaving town for a vacation. I believed that an appeal was filed." (Doc. 77-2 at 3 – 4.)

Kavis's second declaration states "It is my belief that I directed Mr. Heuwinkel to appeal the sentence. Before the Marshals escorted me out of court, I expressed my dissatisfaction with the length of my sentence with Mr. Heuwinkel, stating "we're going to appeal, right?" I intended this question to convey to Mr. Heuwinkel that I wanted to appeal my sentence." (Doc. 92-1 at 1.)

At the hearing, Kavis's story changed once again. He claimed that at the sentencing hearing, after the Court pronounced the sentence on Count I, he was so rocked by the initial term that he immediately leaned over to Heuwinkel and said something to him about appealing. He said that, before he had even finished his sentence, Heuwinkel put up a finger in a sort of shushing motion. At the end of the sentencing hearing, Heuwinkel shook his hand and wished him luck, but they did not otherwise speak. They did not speak of appeal again.

Heuwinkel denies Kavis told him he wanted to appeal. Heuwinkel had no reason to think that further consultation was necessary, because he had discussed with Kavis on multiple occasions the fact that Kavis was waiving his right to appeal, and that there was no basis upon which to appeal. (Decl. Heuwinkel at ¶ 18.)

At the evidentiary hearing, counsel for Kavis questioned Heuwinkel about a closing letter he sent the day after sentencing, discussing various matters, including why an appeal would not be advantageous. (Govt. Exh. 1 (Decl. Heuwinkel at ¶

11

1); Exh. 2 (Letter, Doc. 86-1.)) In the letter, Heuwinkel explained to Kavis that he would have 14 days to file a notice of appeal, and Heuwinkel offered to consult if Kavis desired to speak to him about it. (Decl. Heuwinkel at ¶ 18; 7/21/21 Letter.)

Rather than accepting this letter proves Heuwinkel did not know Kavis wanted to appeal, Kavis contends that it is, in fact, proof that he did want to, and that Heuwinkel knew it. (Doc. 92 at 1 – 6.) Kavis emphasizes how much it discusses appeal and posits that it does so to dissuade Kavis from a request he had already made. Heuwinkel's explanation at the hearing was merely that the letter included all of the advice that Heuwinkel had previously given Kavis regarding an appeal. The Court does not find the letter's content to support an inference that Kavis had told Heuwinkel at the sentencing hearing that he wanted to appeal.

The letter itself is a bit of a red herring. The testimony at the hearing was equivocal about the letter. The parties stipulated that Kavis remained at Missoula County Detention Facility, the address to which the letter was sent, until July 26, 2021. The letter is dated the day after Kavis's sentencing, July 21, 2021, which was a Wednesday. In the ordinary course of mail in Missoula, Montana, the letter likely would have arrived at the detention facility within a day or two, sufficient time for it to reach Kavis. However, Kavis did not recall receiving the letter. Heuwinkel testified that he did not recall his office receiving the letter back as undeliverable. Thus, the Court determines it is likely that Kavis received the letter,

but whether he did is not material to the Court's conclusions. The Court concludes that Kavis did not clearly express his desire to appeal, nor did Heuwinkel have reason to believe that Kavis would want to appeal. Heuwinkel did not violate his unconditional duty to file a notice of appeal when instructed to do so by the client. Kavis's claim is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Gonzalez v. Thaler*, 565 U.S. 134, 140 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Buck v. Davis*, 580 U.S. 100, 115 - 116 (2017).

Kavis's claims do not meet the relatively low threshold required to issue a COA. The record of the case, along with the additional evidence and testimony introduced on the issue, provide no factual support for his claim that he instructed counsel to file a notice of appeal or that counsel failed or refused to do so, nor that a scrivener's error in the plea agreement induced him to plead when he would not

13

have otherwise.

The Court does not believe reasonable jurists would find room to debate these issues. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Kavis's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 79) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Kavis files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 22-63-M-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Kavis.

DATED this 2nd day of February, 2024.

_____
Dana L. Christensen, District Judge
United States District Court